UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DR. CHRISTOPHER RUSSO

    Defendant.
_____/

Case No. 2:18-cr-20800-5
District Judge Stephen J. Murphy, III
Magistrate Judge Anthony P. Patti

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY DEFENDANT RUSSO'S MOTION TO REVOKE DETENTION ORDER (ECF No. 131)

**I.     RECOMMENDATION**:  The Court should **DENY** Defendant Christopher Russo's motion to revoke detention order (ECF No. 131).  In sum: there is a presumption in favor of detention; Defendant has twice violated his bond conditions and was in absconder status when his bond was revoked, notwithstanding the fact that he voluntarily surrendered; there is no suitable third party custodian or suitable place for Defendant to live upon the completion of his proposed drug treatment; and Pretrial Services, after having conducted extensive supplemental investigation at this Court's direction, continues to believe that Defendant cannot be adequately supervised on bond and thus recommends detention.

## II. REPORT

### A. Procedural and factual background

#### 1. The bond violations

The pertinent procedural background for this motion is recounted in detail in Judge Murphy's order of reference (ECF No. 137) and is, therefore, only briefly summarized here. Defendant was indicted on one count of health care fraud conspiracy, five counts of aiding and abetting health care fraud, one count of conspiracy to distribute and possess with intent to distribute controlled substances, and one count of aiding and abetting the unlawful distribution of controlled substances. He was released on bond by Judge Majzoub on December 6, 2018. (ECF Nos. 24, 27.) The initial bond conditions for Defendant were as follows:

(1)   Report as directed to Pretrial Services

(2)   Surrender any passport to Pretrial Services

(3)   Do not obtain a passport or other international travel document

(4)   Travel is restricted to the Continental United States

(5)   Do not possess a firearm, destructive device, or other dangerous weapon

(6)   Do not use or unlawfully possess a narcotic drug or other controlled substance unless prescribed by a licensed medical practitioner

2

(7)     Submit to drug testing/drug treatment as directed by Pretrial Services

(8)     Surrender firearm to a suitable third party and provide written verification to Pretrial Services by December 10, 2018, at 4:00 PM

(9)      Do not bill, or cause to be billed, any claims to a federal healthcare program

(10)    Do not prescribe controlled substances

(11)    No contact with co-defendants

His bond conditions were amended on December 11, 2018, adding the condition that he "not direct the prescription of controlled substances to any person." (ECF No. 48.)

Between February and May of 2019, Defendant violated his bond conditions by testing positive for cocaine after being arrested by the Birmingham, Michigan police and by repeatedly failing to appear for his scheduled drug testing, as described in ECF No. 112. A pretrial report prepared at that time further indicates that Defendant was discharged from his intensive outpatient drug treatment program for failure to attend. His whereabouts were at times unknown during this period. (*See* ECF No. 119, PageID.628.) After a June 18, 2019 bond review hearing, the conditions of his pretrial release were again amended to include 24/7 GPS monitoring. (ECF No. 114.) On July 12, 2019, upon completion of a

residential drug treatment program, Defendant was placed on location monitoring in the Western District of Michigan. (ECF No. 119, PageID.628.)  However, Defendant again violated the terms of his pretrial release.  According to the resulting petition filed by pretrial services:

> On August 8, 2019, at approximately 8:00 AM, the defendant left his residence in Grand Rapids, Michigan, and headed towards Detroit, Michigan, as verified by GPS tracking. The defendant spent the night at an address at or near West McNichols Street in Detroit, which was not authorized by the Western District of Michigan.[1]
>
> On August 9, 2019, at approximately 5:00 AM, Pretrial Services in the Western District of Michigan received notification that the defendant's location monitoring battery was low. Numerous attempts were made to contact the defendant to charge his battery, but the location monitoring unit has been unable to track the defendant since approximately 7:32 AM this morning. At approximately 11:00 AM, the defendant called Pretrial Services in the Western District of Michigan and said that he is heading back to Grand Rapids. However, Pretrial Services in the Western District of Michigan and the Eastern District of Michigan have been unable to reach the defendant since he called, and his whereabouts are still unknown.

(ECF No. 119, PageID.628-629.)  Judge Goldsmith, acting in his capacity as the presiding judge, accordingly canceled the bond on August 9, 2019, and ordered Defendant's arrest. (ECF No. 119, 120.)  An August 28, 2019 discharge note from

---

[1] His Pretrial Officer explained the significance of this location at the hearing: "[Defendant] reported to me that his drug dealer was off of Six Mile in Detroit. So that -- I believe West McNichols is Six Mile Road in the Detroit city limits." (ECF No. 159, PageID.922.)  Defendant proffers that he was in a hotel, with no explanation as to what he was doing in Detroit, although he initially claimed that he had gone *to Birmingham* to sell a house. (ECF No. 159, PageID.892-893.)

4

Hope Network Center for Recovery indicates that Defendant "did not return to treatment nor did he respond to various attempts to contact him." The Government's proffer indicates that Defendant was AWOL for eight days after the arrest warrant was issued. As Defendant's attorney explained at the hearing with respect to this latest violation, "And I believe, just to be completely candid, once there was a violation and once he knew the outcome, that it took him a minute, *as in a week*, to face the reality." (ECF No. 159, PageID.893 (emphasis added).)

### 2. The instant motion, hearing and aftermath

On September 9, 2019, Defendant filed the instant motion to revoke the detention order. (ECF No. 131.) The United States has responded and opposes Defendant's re-release. (ECF No. 135.) The matter was referred to me for a report and recommendation (ECF No. 137), and I held an extensive hearing on October 9, 2019, lasting an hour and 20 minutes, which included sworn testimony from a potential third-party custodian. At the hearing, I explored various scenarios for possible release through active questioning from the bench, and attempted to leave no stone unturned in inquiring about drug rehabilitation, possible third-party custodians and living situations. (*See* transcript, ECF No. 159.) Third-party custodians and/or housemates who are themselves struggling with substance abuse are neither acceptable to Pretrial Services nor to the Court. One potential third-party custodian was nominated by defense counsel, a gentleman by the name of

5

Clarence Medema, CPA. I took testimony from Mr. Medema, who told the Court, under oath, that he has no criminal convictions in his background and that, despite his own addiction and being in recovery, he himself has been sober since 2009. (ECF 159, PageID.936, 933.) The post-hearing investigation conducted by Pretrial Services determined that neither of these statements were true: Mr. Medema has at least two criminal convictions, the most recent of which, *from 2017*, culminated with a guilty plea for a *high blood alcohol content*. Not surprisingly, he has been deemed unfit to serve as third-party custodian.[2]

Since the time of the hearing, Defendant's Pretrial Services Officer has conducted extensive investigation, at the Court's direction, to determine if there are suitable living conditions which can sustain Defendant's compliance after further drug rehabilitation and to help identify a suitable third-party custodian. The Pretrial Services Officer continues to recommend detention.[3] The Court takes a pretrial services officer's recommendation into consideration, *inter alia,* in determining whether to release or detain a criminal defendant. *See United States v.*

---

[2] It is for the U.S. Attorney to ponder whether these obvious disparities between Medema's sworn testimony in Court and his true history warrant any further consideration.

[3] A copy of the most recent memorandum received from Pretrial Services, dated December 19, 2019, and copied to all counsel of record, has been forwarded to Judge Murphy under separate cover. Among other things, the memorandum explains in detail why the various living situations proposed by defense counsel are unacceptable.

*Marcrum*, 953 F. Supp. 2d 877, 882 n.3 (W.D. Tenn. 2013) ("The Court considers the pretrial services report as 'evidence' in analyzing whether the defendant has met his burden of production in rebutting statutory presumption in favor of detention."). Similarly and commendably, defense counsel has made extensive efforts to locate a drug rehabilitation program which would accept Defendant and to identify stable post-rehabilitation living arrangements, truly going the extra mile for his client. The Court was updated as to the status of these efforts in an on-the-record telephone conference held on December 23, 2019. I am not satisfied with the outcome of these efforts. Defense counsel conceded that he does not have anyone who could now be suggested as a suitable third-party custodian, and even the unrevealed person he had in mind has been rejected from consideration by Defendant himself. Perhaps tellingly, despite the fact that Defendant has family in Michigan, and they are characterized as supportive, no family member has volunteered to serve as a custodian.

    **B.    Legal Standards under the Bail Reform Act**

        **1.    18 U.S.C. § 3142**

In general, "[t]he default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Pursuant to "the Bail Reform Act, 18 U.S.C. § 3142 . . . a defendant may be detained pending trial only if a judicial officer 'finds that no condition or

7

combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *Id.* (quoting 18 U.S.C. § 3142(e)). "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 Fed. Appx. 76, 77 (6th Cir. 2004) (citing *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir.2003)); *United States v. Ellison*, 2007 WL 106572, at *2 (E.D. Mich., Jan. 8, 2007).

However, because probable cause for each of the charges in this case has been established through the grand jury's superseding indictment, there is a presumption in favor of detention in this case. 18 U.S.C. § 3142(e)(3)(A). *See United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) ("We affirm the District Court's decision that the indictment in this case… is sufficient to establish probable cause that Hazime committed one or more of the charged offenses."); *see also United States v. King*, 849 F.2d 485, 487-88 (11th Cir. 1988) ("the government need not make a showing of probable cause independent of the grand jury's indictment.") In order to overcome this presumption, a defendant must produce evidence *both* that he is not a flight risk *and* that he does not pose a danger to the community. 18 U.S.C. § 3142(e)(3); *see United States v. Daniels,* 772 F.2d 382, 383 (7th Cir. 1985).

### 2. 18 U.S.C. § 3148

Although both Defendant and the Government analyze this motion as if this detention hearing were occurring in the first instance, <u>revocation of release</u> for violation of bond conditions must be analyzed under § 3148 of the Bail Reform Act, which reads, in pertinent part:

> To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated. The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—
>
> **(1)** finds that there is—
>
> **(A)** probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>
> **(B)** clear and convincing evidence that the person has violated any other condition of release; and
>
> **(2)** finds that—
>
> **(A)** based on the factors set forth in section 3142(g) of this title [18 U.S.C.§ 3142(g)], there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
> **(B)** the person is unlikely to abide by any condition or combination of conditions of release.
>
> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of

> release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

18 U.S.C. § 3148(b).

### C.  Application of the factors to this case

In light of the factors discussed above, all of which I have considered here, I find that Defendant has not introduced sufficient evidence as to both danger and flight risk in order to rebut the presumption favoring detention.

#### 1.  Release Factors (18 U.S.C. § 3142(g))

##### a. Nature and circumstances of the charges

The Court first considers the nature and circumstances of the charges against Defendant, including whether they involve certain enumerated offenses, including crimes for which he may be sentenced to a maximum prison term of ten years or more, as prescribed in the Controlled Substances Act. 18 U.S.C. § 3142(g)(1); 21 U.S.C. §§ 801-904. Here, they do. Defendant is indicted on one count of health care fraud conspiracy, five counts of aiding and abetting health care fraud, one count of conspiracy to distribute and possess with intent to distribute controlled substances, and one count of aiding and abetting the unlawful distribution of controlled substances. (ECF Nos. 1, 137.) The nature and circumstances are serious and will merit a lengthy sentence upon conviction or a guilty plea.

10

### b. Weight of the evidence

The second factor the Court must consider is the weight of the evidence. 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. "'[T]he weight of the evidence against the person,' is not relevant to whether probable cause has been established. By its terms, it deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community." *Hazime*, 762 F.2d at 37. As the Ninth Circuit explained in *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991), "Of these factors, the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt."

This factor favors detention. In the instant matter, the Government has not focused on Defendant's dangerousness to the community at large, but rather, on the difficulty in assuring his appearance in light of his failure to abide by repeatedly amended bond conditions, including strong and uncontested evidence of his ongoing drug use, poor performance in drug rehabilitation, failure to cooperate in drug testing, failure to keep his tether charged and operative, failure to stay in the district where he is being supervised and failure to maintain contact with his supervising officers. Past performance in these areas indicates that Defendant is not only a flight risk, but a *danger to himself*, and cannot be properly supervised

11

without the assistance of a dependable third-party custodian, if at all. While in the first instance, it may have appeared to the Court that conditions could be imposed which would reasonably assure his appearance, particularly since he has no prior *capias* history, we now have the benefit of a track record, which does not bode well for him in this area. In light of this history, this factor now favors detention.

### c. History and characteristics

The third factor the Court must consider is "the history and characteristics of the person" accused. 18 U.S.C. § 3142(g)(3). This factor, while partially favoring release in light of Defendant's strong family and community ties, educational history (including a medical degree), professional accomplishments as a physician and previous success with drug rehabilitation, ultimately also favors detention in light of Defendant's 20-year history of addiction to controlled substances, relapse and repeated failure to abide by the bond conditions already imposed in the instant matter. His history of relapse makes him a danger to himself. *See United States v. Fitzhugh*, No. 16-mj-30364, 2016 U.S. Dist. LEXIS 122953, at *14 (E.D. Mich. Sep. 12, 2016) (Drain, J.) ("Notwithstanding the mitigating effect of Ms. Burkette's involvement and the Defendant's lack of a criminal history, the Defendant's suicidal history and unstable mental health make him a danger to himself. Therefore, the Defendant's history and character favors detention rather than release.) I agree with the Government's portrayal of Defendant as having

12

demonstrated a pattern of attending drug treatment, being unsuccessful, and absconding, even when on location monitoring. (ECF No. 159, PageID.913.) Again, while this factor would have favored him in the first instance, hindsight at the present juncture now favors detention.

### d. Dangerousness

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). There is no evidence before the Court which suggests that Defendant poses a continuing danger to the community at large which cannot be reasonably minimized through the imposition of bond conditions; however, Defendant has proven to be a danger to himself, and his performance on bond thus far demonstrates that without the imposition of stricter conditions which are not available here, namely, the presence of a reliable third-party custodian, there are no available conditions which can reasonably protect against this danger. *See United States v. Krueger*, No. 13-20242, 2013 U.S. Dist. LEXIS 96053, at *6 (E.D. Mich. July 10, 2013) (Binder, M.J.) (concluding that the Court must consider the defendant's own mental health condition under § 3142(g)(4), since the Court must consider "the nature and seriousness of the danger to *any person* or the community") (emphasis added within the cited case). *See also United States v. Platt*, No. 18-cr-195-WJM, 2018 U.S. Dist. LEXIS 169179, at *10-11 (D. Colo.

13

Oct. 1, 2018) ("The Court does not doubt that Platt has a genuine need for treatment, but under the statutory framework that binds this Court, Platt's needs are secondary to the question of whether he poses a flight risk or a danger to himself or the community.").[4]

Defendant's most recent bond violation also demonstrates that he is likely to make himself scarce rather than face the consequences of failing to comply with release conditions. Even while recognizing that Defendant has proposed reentry into the Hope Network Center for Recovery for 4 to 6 weeks on a GPS tether, and has presented evidence of his acceptance into that program, Defendant's previous lack of long-term success in this program, the strong temptation toward relapse that he will face, and his inability to come up with an acceptable third-party custodian who would be able to keep tabs on him upon his release convinces me that there are no conditions that would reasonably assure his own safety and compliance.

### 2.     Revocation factors (18 U.S.C. § 3148(b))

Since bond has already been revoked in this case, the present proceeding is, in essence, a review of whether Judge Goldsmith's previous revocation of bond was appropriate. Alternatively applying the factors under § 3148(b), I believe that

---

[4] As I noted from the bench, "So one of the things the Court considers is not just a danger to the community, but danger to himself. Because it's danger to 'any individual or the community.' And 'the individual' includes him." (ECF 159, PageID.902.)

it was. First, I find that there is probable cause to believe that Defendant "committed a Federal, State, or local crime while on release." 18 U.S.C. § 3148(b)(1)(A). Specifically, he has admitted to the use of cocaine while on release and "was arrested by the Birmingham (Michigan) Police Department for Operating Under the Influence of Drugs. Police took a sample of the defendant's blood to be sent out for testing. The blood results were positive for cocaine." (ECF No. 112, PageID.536-537.) Second, I find that there is "clear and convincing evidence that [Defendant] has violated" various conditions of his release, as outlined above. 18 U.S.C. § 3148(b)(1)(B). And third, as explained in the previous section, I find, "based on the factors set forth in section 3142(g)…[that] there is no condition or combination of conditions of release that will assure that [Defendant] will not flee or pose a danger to the safety of any other person[,]" namely, himself, 18 U.S.C. § 3148(b)(2)(A), and that Defendant "is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b)(2)(B). To the extent that any rebuttable presumption in favor of detention may exist in light of these findings under either § 3142(g) or § 3148(b), I further find that the presumption has not been overcome, due to the lack of a suitable third-party custodian and suitable living conditions for Defendant in the event that he were to eventually successfully complete his proposed course of drug rehabilitation.

### D. Conclusion

Defendant has violated the conditions of his pretrial release multiple times and in multiple ways. I have no doubt that he would benefit from drug rehabilitation services, an avenue down which the Court has twice previously embarked and from which Defendant has previously exited on his own volition, without achieving the desired long-term success. GPS monitoring, a particularly restrictive bond condition, has also failed, and Defendant's whereabouts were outside of the supervising district and ultimately unknown until a warrant was issued for his arrest on his second bond violation. What *has* changed since then is that Defendant has now been incarcerated for several months, no doubt achieving a withdrawal from controlled substances. Whether that would last if he were to be released at this juncture is questionable, in light of his prior history, the longevity of his addiction and his demonstrated inability to resist the temptation to return to drugs and to remain in rehabilitation. Given Defendant's poor performance on bond, the already restrictive conditions under which he has been previously released, Pretrial Services' inability to successfully supervise him up to this point, and its recommendation that he not now be released, I believe that it is unlikely he will abide by his bond conditions at this time, notwithstanding any drug withdrawal which may have been achieved.

In the present posture, the margin for error should bond be reissued would be razor thin, and would require, *for any chance of success however so slight*, inpatient rehab, 24/7 GPS monitoring, home detention, a <u>live-in, third-party custodian</u> upon completion of the program, and "zero tolerance" through trial. Any such third-party custodian must have a clean record for substance abuse and criminal activity. There is no known person who is suitable to this task, even after Defendant has had nearly three months to identify one. Nor is there is a suitable place for him to live and maintain the supervision required. As it stands, the only place where it can be reasonably assured that Defendant will stay away from drugs, have his whereabouts known and abide by the law is in custody. Furthermore, there is a formidable concern, based upon Defendant's prior behavior, that if he does violate his bond conditions by engaging in drug use or otherwise, his instinct will be to flee. (See ECF No. 159, PageID.892-893.) Applying the legal standards discussed above, including the presumption in favor of detention, the § 3142(g) factors weigh heavily against release, as do the § 3148 findings made herein. Accordingly, I recommend detention.

Dated:  January 2, 2020              s/*Anthony P. Patti*
                                                     Anthony P. Patti
                                                     UNITED STATES MAGISTRATE JUDGE